HYDE v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-349-CR

CHARLES GLEN HYDE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

OPINION

------------

Appellant was charged by information with the misdemeanor offense of assault, and he was convicted by a jury.  He appeals in two issues.  The first is whether the trial court erred by denying Appellant’s requested jury instruction regarding consent as a defense to assaultive conduct under Texas Penal Code section 22.06.  The second is whether the trial court erred by refusing to allow Appellant to cross-examine the complainant, John R. Davis, about a pending civil suit that Davis brought against Appellant for the same incident alleged in the information.  Because we find no reversible error, we will affirm.

Appellant’s theory of defense was partly to contrast his own reputation and character with that of Davis and try to persuade the jury that because of an ongoing civil dispute between them, Davis had a motive to testify falsely.  Appellant urged that he was defending himself and that Davis consented to the assault.

Appellant owns and operates an airport at Roanoke, Texas where he sells airport lots and charges a license fee for use of the runway.  He contends that his dispute with Davis arose when Davis bought land at the airport, failed to pay the license fee, but wanted to use the runway anyway.  Appellant testified that on April 14, 2002 he found a dog on the airport property and had to drive by Davis’s house to take the dog home.  Appellant said he saw Davis standing in a ditch by the road, so Appellant stopped his truck and Davis started to argue and use profanity about their property dispute.  On direct examination, Appellant told the jury that Davis “crunched down like he was going to hit me.  I put up my hands, blocked his hand, hit him on top of the head, kicked him in the butt, and he turned around to come back at me.  I hit him again in the side of the face.”  When asked why he hit Davis, Appellant testified, “I felt he was getting ready to strike me.”  Appellant also testified that immediately before the fist fight, he was thinking that on two previous occasions Davis had threatened to fight him.  Davis testified on direct examination that Appellant stopped his truck, got out and “raced” toward him, and was “at me” within a “second or two.”  Davis stated he told Appellant he did not want to fight, but Appellant hit and kicked him anyway.  Davis said that Appellant “hopped like a boxer” during the fight, and that Davis lost two teeth from the first blow Appellant struck.  Davis also suffered a black eye.

Two witnesses saw the fight and testified at trial.  The first was Roger Johnson, who had been driving with his wife to look at his airplane that was parked in a hanger at the airport.  Johnson told the jury he saw Appellant stop his truck, get out of it, and begin “yelling” and “hollering” at Davis. When asked whether Davis made “any threatening gestures” toward Appellant, Johnson testified “Not that I could see.  He [Davis] looked -- I mean, he looked kind of like he was hollering back, and the other guy [Appellant] was making more the aggressive physical moves, grabbed [Davis] and started hitting him.  Hit him a couple of times.”  He also testified that Appellant hit Davis a “couple times, twice at least, in the face.” 

The second witness, Susan Johnson, testified that from the vehicle she then occupied with her husband, she saw Appellant stop his truck, get out, come “over into the grass and after yelling some words and some dialogue back and forth, [Appellant] punched the man that was standing in the lawn.”  She told the jury that Appellant “crossed into the grass and was yelling something at [Davis] and then kind of walked briskly towards [Davis].”  When asked whether she had seen “any threatening movement” by Davis, Susan Johnson testified, “No.  I did not.”  No one else saw the fight.

The State argues that the evidence did not raise the defensive theory of consent to assault.  We agree.  There is no evidence that Appellant held a reasonable belief that Davis consented to being hit in the face with Appellant’s fist or that Appellant’s own conduct of acting in that manner did not threaten serious bodily injury.  
See
 
Tex. Penal Code Ann.
 § 22.06 (Vernon 2003).  
See also id.
 § 1.07(11) (Vernon Supp. 2004-05) (“consent” means “assent in fact, whether express or apparent”).  Accordingly, the trial court did not err by refusing to instruct the jury on the defense that Davis consented to the assault. 
 We overrule Appellant’s first issue.

In his second issue, Appellant asserts that the trial court violated his Sixth Amendment right to cross-examine Davis about a civil lawsuit he had filed against Appellant.  
See 
U.S. Const.
 amend. VI;
 Hoyos v. State
, 982 S.W.2d 419, 420-21 (Tex. Crim. App. 1998).  The State concedes that the trial court should have allowed the cross-examination but argues that Appellant was not harmed by the trial court’s refusal to permit it.  A violation of rights afforded by the Sixth Amendment is subject to a harmless error analysis.  
Delaware v. Van Arsdall
, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986).  Initially, we must assume that the damaging potential of the cross-examination was fully realized.  
Id.
  If it was, we must perform our review under these factors:

(1)The importance of the witness’s testimony in the prosecution’s case;

(2) Whether the testimony was cumulative;

(3) The presence or absence of evidence corroborating the testimony of  the witness on material points;

(4) The extent of the cross-examination otherwise permitted; and

(5) The overall strength of the prosecution’s case.

Id.
  Then, we must determine whether the error was harmless beyond a reasonable doubt.  
See
 
Tex. R. App. P.
 44.2(a).

Davis reported the assault to 9-1-1 within minutes after it happened and within hours gave a statement about it to Deputy Lemaire  Approximately ten months after the fight, Davis filed his civil lawsuit seeking damages from Appellant.  However, the record does not establish that the mere filing of this lawsuit caused Davis to change his testimony at the trial of this criminal case.  In fact, his testimony is essentially the same as his statement to Deputy Lemaire.  The State had two eyewitnesses to the fight who testified, so Davis’s testimony was not necessary to obtain a conviction.  The disinterested testimony of the two eyewitnesses supported the prosecution’s theory of the case.  Appellant’s own testimony affirmed that he kicked Davis during the fight.  The photographs Deputy Lemaire took after Davis was treated at the hospital corroborated the nature and intensity of the attack by Appellant.  Davis’s loss of two teeth confirmed his story of the damage done by Appellant’s first blow.  The prosecution’s case at trial was strong, so that the lack of cross-examination of Davis about his civil lawsuit was not a decisive factor in the jury finding Appellant guilty of assault.  We overrule Appellant’s second issue.

Having carefully considered and overruled each of Appellant’s issues, we affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B:  HOLMAN, LIVINGSTON, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 4, 2005